UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
SIDDHARTH N. GHOSH,

                              Plaintiff,

         - against -

NEUROLOGICAL SERVICES OF QUEENS,
P.C. and DR. JATINDER S. BAKSHI, M.D.,

                             Defendants.
------------------------------------------------------x

**MEMORANDUM & ORDER**

13-CV-1113 (ILG) (CLP)

GLASSER, Senior United States District Judge:

       On March 4, 2013, plaintiff Siddharth N. Ghosh commenced this action against Neurological Services of Queens, P.C. ("Neurological Services") and Dr. Jatinder S. Bakshi, M.D. ("Dr. Bakshi"; together, "defendants"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq.; multiple sections of the New York Labor Law ("NYLL"), Art. 6 § 190, et seq. and Art. 19 § 650, et seq.; and common law. Defendants have not responded to the Complaint, and plaintiff now moves for a default judgment, pursuant to Rule 55(b) of the Federal Rules of Civil Procedure, seeking compensatory, liquidated, and punitive damages, along with interest, costs, and attorney's fees. For the following reasons, that motion is DENIED and this case is DISMISSED.

## BACKGROUND

       Except where otherwise noted, the following facts are taken from the Complaint (Dkt. No. 1) and plaintiff's affidavit in support of this motion (Dkt. No. 15-1), as well as their accompanying exhibits. Plaintiff is a citizen of India and a resident of New Jersey who holds a Master of Science degree from Long Island University and is certified to practice as a physical therapist in New York. On January 18, 2010, Neurological

1

Services hired plaintiff as a physical therapist, offering him a one-year contract with a yearly salary of $70,000.00, eight hours of paid vacation for every four hundred hours worked in a six-month period, and a stipend of up to $1,000.00 per year (plus expenses) for continuing education classes or seminars (contingent on Neurological Service's approval of the course content). Neurological Services also assisted plaintiff in applying for and obtaining an H-1B work visa. Plaintiff's employment agreement with Neurological Services was counter-signed by Dr. Bakshi, who was the sole shareholder and operator of the company. Although that agreement expired in January of 2011, Neurological Services continued to employ plaintiff and pay him the same salary.

In May of 2011, Neurological Services began to delay paying plaintiff regularly. The last paycheck he received was dated December 30, 2011, but issued for the pay period between July 16, 2011 and July 30, 2011. Plaintiff nevertheless continued to work for the company until mid-March of 2012, when he arrived for work only to find the office doors locked and the space completely empty. Plaintiff called Dr. Bakshi, who acknowledged that he had closed down Neurological Services without notifying plaintiff.

Had plaintiff received checks during the period between August 1, 2011 and March 15, 2012 for the usual amount that Neurological Services had paid him, he would have earned $47,788.05 before taxes and withholdings. Additionally, plaintiff never received vacation pay or a stipend for any continuing professional education classes at any time during the two years he worked for the defendants. Although plaintiff made repeated requests of Dr. Bakshi for the amount he believed he was owed after Neurological Services unexpectedly closed down, his requests were ignored and this litigation ensued. The Clerk of Court noted defendants' default on January 22, 2014 (Dkt. No. 11) and plaintiff filed this motion on November 6, 2014 (Dkt. No. 15).

**LEGAL STANDARD**

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for obtaining a default judgment: first, the clerk of court enters the party's default pursuant to Rule 55(a), and second, if the defaulting party fails to set aside the entry of default pursuant to Rule 55(c), the plaintiff must apply for a default judgment pursuant to Rule 55(b).  See Finkel v. Universal Elec. Corp., 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013) (citing Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993)).

The plaintiff has the burden of establishing entitlement to a default judgment, which is not obtained as a matter of right.  See id. at 119 (citing, inter alia, Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993)).  Courts must "supervise default judgments with extreme care to avoid miscarriages of justice." DeMarino Trucking, 838 F. Supp. at 162.  Thus, while the defaulting defendant is deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability, "a district court has discretion . . . to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action." Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).  Additionally, allegations in the complaint pertaining to damages are not deemed admitted and require an independent evidentiary determination.  E.g., id.; Greyhound ExhibitGroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).

**DISCUSSION**

Plaintiff demands $47,775.00 in unpaid salary, $1,918.00 in unpaid vacation pay, $2,000.00 in unpaid continuing professional education stipends, and any other statutory liquidated damages or interest available to him.  See Pl.'s Ex. H at 1-3.  He believes he is entitled to that money pursuant to four separate theories of recovery, and

3

asks the Court for relief under "only one" of them, be it the FLSA's minimum-wage provisions, or the NYLL's unpaid-wage provisions, or breach of contract, or quantum meruit. Pl.'s Mem. at 21-22. While plaintiff is "not entitled to recover twice for the same injury, . . . to the extent [his] allegations allow recovery under both state and federal law, the law providing for the greatest recovery will govern the calculation of damages." Wicaksono v. XYZ 48 Corp., No. 10 Civ. 3635, 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011) (internal quotation marks and citations omitted), rep't & rec. adopted, 2011 WL 2038973 (S.D.N.Y. May 24, 2011). The Court must therefore determine whether the theories plaintiff relies upon actually support his claims, and, if more than one does, which among them provides for the greatest recovery.

## I. Federal Claims & Jurisdictional Concerns

This Court has subject-matter jurisdiction over claims that arise under the "Constitution, laws or treaties of the United States" pursuant to 28 U.S.C. § 1331's "federal question" authority. The sole federal question this case presents is whether plaintiff is entitled to recover under the FLSA. If he is, the Court may exercise supplemental jurisdiction over his remaining state and common law claims pursuant to 28 U.S.C. § 1367(a).

### A. The FLSA

The FLSA requires employers to pay certain employees who engage in commerce or are "employed in an enterprise engaged in commerce or in the production of goods for commerce" a minimum wage ($7.25 an hour at all times relevant to this litigation). 29 U.S.C. § 206(a). Employees covered by the FLSA may sue employers who fail to provide that minimum wage, recovering "the amount of their unpaid minimum wages" along with liquidated damages, costs and fees as the circumstances dictate. Id. § 216(b).

4

The FLSA's minimum-wage provisions do not apply, however, to bona fide "professional" employees, a group that includes employees compensated on a salary basis at a rate of not less than $455.00 per week and whose primary duties require advanced knowledge in a field of science or learning. See 29 U.S.C. § 213(a)(1); 29 C.F.R. §§ 541.300(a), 541.301. The question of what an employee's primary duties are is factual, while the issue of whether such duties render the employee exempt from the FLSA's minimum-wage provisions is a question of law. See McBeth v. Gabrielli Truck Sales, Ltd., 768 F. Supp. 2d 383, 387 (E.D.N.Y. 2010) (citing Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714 (1986)).

Plaintiff's own submissions describe him as a licensed physical therapist with a master's degree in science and a $70,000.00 yearly salary that was to be paid bi-weekly. He is clearly a bona fide professional as the FLSA defines the term, and not covered by the statute's minimum-wage protections. See 29 C.F.R. §§ 541.301(e)(1), (2), (4), & (8) (expressly but not exclusively exempting similar professionals such as medical technologists, registered nurses, physician assistants, and athletic trainers). His federal minimum-wage claims are denied accordingly.

### B.   Jurisdiction After Dismissal of Plaintiff's FLSA Claim

Where, as here, the sole federal cause of action in a case is "patently meritless," its dismissal deprives a district court of supplemental jurisdiction over any remaining state law claims it may have otherwise had pursuant to 28 U.S.C. § 1367(a). See Dunton v. Cnty. of Suffolk, 729 F.2d 903, 910-11 (2d Cir. 1984), amended on other grounds, 748 F.2d 69 (2d Cir. 1984). Plaintiff, however, has also invoked this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). See Compl. ¶ 4. That statute provides federal courts with jurisdiction over cases between citizens of a state and citizens of a

foreign state where the "matter in controversy" is $75,000.00 or more, exclusive of interest and costs. See 28 U.S.C. § 1332(a)(2).

Diversity of citizenship exists here, but the Court must determine whether the damages sought satisfy the jurisdictional requirement. The Second Circuit disfavors dismissal of actions maintained pursuant to diversity jurisdiction merely because "a plaintiff's ultimate recovery is less than [the statutory minimum] amount." See Zacharia v. Harbor Island Spa, Inc., 684 F.2d 199, 202 (2d Cir. 1982).

> The jurisdictional determination is to be made on the basis of the plaintiff's allegations, not on a decision on the merits. Moreover, even where those allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted. . . . Rather, it must appear to a legal certainty from the complaint that the plaintiff cannot recover sufficient damages to invoke federal jurisdiction.

Id. (citing, inter alia, St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938); Deutsch v. Hewes Street Realty Corp., 359 F.2d 96, 98-99 (2d Cir. 1966)). Additional evidence submitted by the parties may be used to clarify or "amplify the meaning of" the allegations in a complaint in determining whether diversity jurisdiction exists. See id. (citing Givens v. W.T. Grant Co., 457 F.2d 612, 613 (2d Cir. 1972), vacated on other grounds, 409 U.S. 56 (1972)). Yet even a complete defense that is plain from the face of the pleadings does not deprive a federal court of jurisdiction, "for who can say in advance that that defen[s]e will be presented by the defendant, or, if presented[,] sustained by the court?" Schunk v. Moline, Milburn & Stoddart Co., 147 U.S. 500, 505 (1893); see also Scherer v. Equitable Life Assur. Soc'y of U.S., 347 F.3d 394, 398 (2d Cir. 2003) (applying this "affirmative defense rule" in a case where res judicata applied to the amount in controversy, but noting it seemed "paradoxical" to do so when it appeared "to a legal certainty" that the defense would be successful).

Ultimately, therefore, while a court must accept plaintiffs' assurances that their "uncertain money damages" will exceed the statutory minimum without applying any affirmative defenses to their claims, it cannot ignore subsequently-discovered facts which reveal that, "from the outset," it was or should have been certain that plaintiffs could not recover $75,000.00 or more.  See Tongbrook Am. v. Shipton Sportswear Co., 14 F.3d 781, 785 (2d Cir. 1994).  For the reasons set forth below, it is certain that plaintiff here fails to meet the statutory minimum amount in controversy required for this Court to exercise diversity jurisdiction over his claims.

## II. State and Common Law

Plaintiff's own allegations make it clear that none of his state or common law causes of action entitles him to recover $75,000.00 or more.  See Zacharia, 684 F.2d at 202.  This Court therefore lacks jurisdiction over those claims, and this case must be dismissed.

### A. The NYLL

It is well settled that a plaintiff cannot assert a statutory claim for unpaid wages under the NYLL "if he has no enforceable contractual right to those wages." E.g., Tierney v. Capricorn Investors, L.P., 592 N.Y.S.2d 700, 703 (App. Div. 1993).  Plaintiff's original contract expired in January of 2011, but he continued to work for, and be paid at the same rate by, Neurological Services.  See Pl.'s Ex. D.  "The general rule is that where one enters the employment of another for a fixed period at a stated annual salary, and the employment continues beyond that period, the presumption is continuance of the relationship for another year at the same salary." Shenn v. Fair-Tex Mills, Inc., 273 N.Y.S.2d 876, 877 (App. Div. 1966) (per curiam) (citing, inter alia, Adams v. Fitzpatrick, 125 N.Y. 124, 129-30 (1891)).  This common-law rule, however, "cannot be used to imply

7

that there was mutual and silent assent to automatic contract renewal when an agreement imposes an express obligation on the parties . . . to extend the term of employment." Goldman v. White Plains Ctr., 11 N.Y.3d 173, 178 (2008).

The terms of plaintiff's employment contract state that "both parties will have the option to renew this agreement annually." Pl.'s Ex. D at 1 (emphasis added). This language clearly "impose[d] an express obligation on the parties" to "extend the term of employment" if they wished to do so. See Goldman, 11 N.Y.3d at 178. They did not, and plaintiff became an at-will employee when his contract expired on January 18, 2011. See id. at 175. He can therefore only invoke the NYLL to recover unpaid wages which he was contractually entitled to receive between January 18, 2010 and January 17, 2011.

Plaintiff admits that he was paid his full regular salary during the year his contract was in force. While he was not compensated for his unused vacation time that was to be paid "at year end of contract" (Pl.'s Ex. D at 3), he cannot prevail on his claim for that money under the NYLL because it expressly prohibits "professional" employees who make more than $900.00 a week (such as plaintiff) from recovering vacation pay. N.Y. Lab. Law § 198-c; N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.14(c)(4)(iii); see also Galasso v. Eisman, Zucker, Klein & Ruttenberg, 310 F. Supp. 2d 569, 575 (S.D.N.Y. 2004). Finally, plaintiff's $1000.00 stipend for continuing education was "entirely discretionary and subject to the non-reviewable determination of his employer," and thus did not constitute "wages" as the NYLL defines them. See Truelove v. Ne. Capital & Advisory, Inc., 95 N.Y.2d 220, 224 (2000).

Given the foregoing, plaintiff cannot (and could never) recover any wages by invoking the NYLL, and his claims pursuant to that statute are denied.

8

### B. Breach of Contract

Since plaintiff was paid all of his regular salary for the year his employment contract was in force, the most he could potentially recover under a breach-of-contract cause of action would be his unpaid vacation time and continuing education stipend for that year. He can recover far more in quantum meruit for the reasons discussed below, and so his decision to pursue only whichever cause of action allows him to recover the largest amount of unpaid wages waives his breach-of-contract claim.

### C. Quantum Meruit

Quantum meruit, which means "as much as he deserved," is an equitable "measure of liability" awarded when a defendant is unjustly enriched by services provided by a plaintiff who performed them without a contract to do so. See Seiden Assocs., Inc. v. ANC Holdings, Inc., 768 F. Supp. 89, 96 (S.D.N.Y. 1991), rev'd on other grounds, 959 F.2d 425 (2d Cir. 1992). In order to recover in quantum meruit under New York law, a plaintiff must establish "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." Revson v. Cinque & Cinque, P.C., 221 F.3d 59, 69 (2d Cir. 2000) (internal quotation marks and citation omitted). Plaintiff has satisfied all four of the above elements here. Since he seeks to recover only $47,775.00 in damages under that theory of liability, however, he still falls short of the $75,000.00 matter-in-controversy jurisdictional bar.[1]

---

[1] Plaintiff does not seek to recover his unpaid vacation time and continuing education stipend as part of his quantum meruit claim, but even if he did, he still would not reach $75,000.00 in damages. See Pl.'s Mem. at 30.

9

### D. Compensatory & Punitive Damages for Wrongful Termination

Plaintiff devotes considerable space in his memorandum of law to the final two causes of action in his complaint, which seek compensatory and punitive damages under an unspecified theory of liability for the "mental agony, torture and stress" defendants caused him when Neurological Services shut down, thereby effectively terminating his employment. See Compl. ¶¶ 58-67; Pl.'s Mem. at 36-42. New York "does not recognize a cause of action for the tort of abusive or wrongful discharge of an at-will employee" such as plaintiff, however, which makes it legally certain that he never could have prevailed on those claims. E.g., Barcellos v. Robbins, 858 N.Y.S.2d 658, 660 (App. Div. 2008) (collecting cases).[2] Plaintiff's request for damages under the fifth and six causes of action in his Complaint is therefore denied.

### E. Interest, Costs, & Fees

As previously noted, 28 U.S.C. § 1332(a) specifically excludes interest and costs from the matter in controversy. While an exception to that rule exists for interest that "is owed as part of an underlying contractual obligation," no such obligation exists here, as plaintiff's sole claim with any hope of success sounds in quantum meruit. See Grunblatt v. UnumProvident Corp., 270 F. Supp. 2d 347, 350 (E.D.N.Y. 2003) (quoting Transaero, Inc. v. La Fuerza Area Boliviana, 24 F.3d 457, 461 (2d Cir. 1994)).

As for attorney's fees, the Second Circuit has held that they may be treated as part of the matter in controversy "only where they are recoverable as of right pursuant to statute or contract." In re Ciprofloxacin Hydrochloride Antitrust Litig., 166 F. Supp. 2d 740, 755 (E.D.N.Y. 2001) (citing Givens, 457 F.2d at 614). Plaintiff points no statute or

---

[2] Plaintiff also claims that the FLSA entitles him to compensatory and punitive damages, but the section he cites, 29 U.S.C. § 216(b), provides for such damages only for violations of 29 U.S.C. § 215(a)(3), which concerns retaliation, not failure to pay wages. See Solis v. SCA Rest. Corp., 938 F. Supp. 2d 380, 403 (E.D.N.Y. 2013).

10

contract that would permit him to recover fees here, and the Court is aware of none. His attorney's fees, therefore, cannot be used to satisfy the matter-in-controversy requirement.

## CONCLUSION

For the foregoing reasons, plaintiff's federal cause of action is patently meritless, and it is clear that the amount in controversy in this case never reached $75,000.00, which divests the Court of jurisdiction over plaintiff's remaining state and common law claims. His motion for a default judgment is therefore DENIED, and his Complaint is DISMISSED without prejudice to the refiling of the claims over which this Court lacks jurisdiction in state court. The Clerk of Court is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
February 3, 2015

/s/
I. Leo Glasser
Senior United States District Judge